# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Custom Workstation Installation, LLC,

    Plaintiff,

         Case No. 1:21-cv-3975-MLB

v.

Working Spaces, Inc.,

    Defendant.

_____/

## OPINION & ORDER

Defendant Working Spaces, Inc. hired Plaintiff Custom Workstation Installation, LLC as subcontractor on a building project but failed to pay for the work performed. Plaintiff claims Defendant provided terrible working conditions; Defendant says Plaintiff botched the job. Plaintiff sued Defendant, and Defendant filed counterclaims. Plaintiff moves for summary judgment on those counterclaims. (Dkt. 30.) The Court grants Plaintiff's motion in part and denies it in part.

## I.    Background

Plaintiff provides custom workstation installation services to its clients.  (Dkt. 37 ¶ 1.)  Defendant hired Plaintiff as a subcontractor to help build a new building.  (Dkt. 37 ¶ 2.)  Among other things, Plaintiff agreed to install a glass partition system called Maars "Lalinea," which includes double-glazed glass.  (Dkt. 37 ¶ 24.)  The parties describe the Lalinea product as a "stick-built" system (which means someone has to build and seal the glass partitions on site) rather than a "unitized" system (which means someone merely installs a prefabricated system). (Dkt. 37 ¶ 26.)  A stick-built system is tricky.  (Dkt. 37 ¶ 31.)  As part of this, Plaintiff says the installer must have a clean and dust-free work site (presumably so the installer can assemble and seal the double glazed glass without getting dust between the panes).  (Dkt. 37 ¶ 27.)

### A.    The Contract and Its Uncertain Terms

The parties agree they entered into a contract based on a quote Plaintiff provided Defendant in January 15, 2019.  (Dkt. 37 ¶¶ 7, 11.) They disagree as to the terms of the contract and whether each other

violated those terms.[1]  Plaintiff, for example, claims the contract required Defendant to provide Plaintiff a clean worksite before Plaintiff was required to begin installation.  (Dkt. 37 ¶ 12.)  Defendant agrees they "initially discussed" this requirement.  (Dkt. 37 ¶ 12.)  But Defendant says it later told Plaintiff the worksite would not be clean, and Plaintiff agreed to install the glass partitions anyway in exchange for more money. (Dkt. 37 ¶ 12.)  The parties agree Defendant said it would provide Plaintiff technical training about installing Maars glass.  (Dkt. 37 ¶ 17.) Defendant denies this was a material term of the agreement and insists Plaintiff said it was already capable of installing the glass system.  (Dkt. 37 ¶ 17.)  The parties agree the contract gave Plaintiff nine weeks to complete installation (or three weeks per floor).  (Dkt. 37 ¶¶ 15-16.) Plaintiff says Defendant gave it only one week per floor.  (Dkt. 37 ¶¶ 15-16.)  Defendant insists it gave Plaintiff the required time.  (Dkt. 37 ¶ 16.) The parties agree Defendant told Plaintiff that, after installation was completed, it would provide Plaintiff a "punch list" of items that needed

---

[1] They also disagree on the date of the contract, Defendant saying they entered into a contract on February 21, 2019 and Plaintiff saying they "entered into a parol agreement" in early May.  (Dkt. 37 ¶¶ 7, 11.)  The date of the contract is immaterial to the issues presently before the Court.

to be fixed and an opportunity to make the repairs. (Dkt. 37 ¶¶ 12-14.) The parties disagree as to whether Defendant did this. (Dkt. 37 ¶¶ 83, 84.)

**B.    Installation Problems**

There were a lot of problems with the installation. The workspace Defendant provided Plaintiff was—by Defendant's own admission—not "clean." There was ongoing construction, including wood that was being sanded (and presumably producing a lot of dust) near the installation site. (Dkt. 37 ¶ 52.) No one had painted the walls or installed flooring, base tiles, or ceiling tiles. (Dkt. 37 ¶¶ 52-53.) Ms. Flacke (one of Defendant's former employees who supervised Plaintiff) admitted the work site was "not ready" for Plaintiff. (Dkt. 37 ¶ 53.) Defendant does not dispute this allegation but—as explained—says Plaintiff knew of the problem and agreed to commence work anyway. (Dkt. 37 ¶ 54.)

Defendant arranged for a Maars product representative to provide Plaintiff training on the Lalinea system. (Dkt. 37 ¶35.) Plaintiff contends the representative was incompetent, which Defendant disputes. (Dkt. 37 ¶ 34.) Maars sent a replacement trainer, but he did not arrive until after Plaintiff had begun installation. (Dkt. 37 ¶ 35.) When he

finally got there, he determined Plaintiff had to remove all the glass it had previously installed pursuant to the initial trainer's instructions. (Dkt. 37 ¶ 36.)

Maars delivered a lot of the glass without labels to provide Plaintiff dimensions or to identify where Plaintiff was supposed to install each piece. Plaintiff thus had to measure every piece of glass before installing it. (Dkt. 37 ¶ 59.) Maars shipped one load of glass in an open container, causing much of it to break. Plaintiff had to sift through all the glass to find damaged pieces, report them to Maars, and order replacement parts. (Dkt. 37 ¶ 60.) This hurt Plaintiff's ability complete installation on time. (Dkt. 37 ¶ 63.) Some of the glass was damaged by other contractors at the worksite, causing further delays as Plaintiff ordered replacement parts. (Dkt. 37 ¶ 68.)[2] Maars also delivered so-called "wrong-handed doors." (Dkt. 37 ¶ 66.) Plaintiff says this prevented it from fully installing the doors on time. (Dkt. 37 ¶ 66.) Defendant admits many of

---

[2] Defendant disputes this statement as not supported by the cited evidence. But the cited evidence supports the statement adopted by the Court. (Dkt. 35-5 at 73:1-74:8.) It does not support the second half of Plaintiff's statement, i.e., that the glass had to be inspected before being delivered back to the site. *Id.*

these difficulties but denies they caused much of a problem.  (Dkt. 37 ¶¶ 64, 66.)

Plaintiff says Defendant's other contractors did not build the openings into which Plaintiff was supposed to install the glass according to the right dimensions.  (Dkt. 37 ¶ 69.)  As a result, Plaintiff had to find "workarounds" (like recutting wood panels and adding or removing drywall and wall tack) to make the glass fit properly.  (Dkt. 37 ¶¶ 71-72.) Plaintiff says most of these workarounds were not "standard" or part of its contractual agreement.  (Dkt. 37 ¶ 73.)  Defendant disagrees, saying Maars provided Plaintiff solutions to these problems and "contractors and subcontractors typically need to come up with workarounds, both standard and non-standard, during the completion of a project."  (Dkt. 37 ¶ 71.)

## C.   The Aftermath

In February 2020, the general contractor sent Defendant a Change Order for costs of repairing damage Plaintiff's employees allegedly caused at the worksite.[3]   (Dkt. 40-1 ¶¶ 6, 7.)   This included the

---

[3] Plaintiff objects to all of these statement on hearsay grounds.  The Court addresses this later.

6

replacement of a rubber base throughout the entire building, the installation of new flooring in one room, and the replacement of several light fixtures. (Dkt. 40-1 ¶ 7.) Defendant also claims a large piece of glass installed by Plaintiff fell out of a wall and smashed on a railing. (Dkt. 40-1 ¶ 8.) Defendant became worried that other pieces (some weighing hundreds of pounds) might also fall due to Plaintiff's faulty installation. (Dkt. 40-1 ¶¶ 9, 10.) Defendant paid another sub-contractor more than $109,000 to complete Plaintiff's work.[4] (Dkts. 37 ¶ 78, 40-1 ¶¶ 11-12.) Plaintiff alleges Defendant gave it a "punch list" of things to fix but then prevented Plaintiff from making the repairs. (Dkt. 37 ¶¶ 82-84.)

Apparently, Defendant never paid Plaintiff. So Plaintiff sued Defendant for breach of contract, unjust enrichment and fraud based on Defendant's alleged termination of the contract and its refusal to pay Plaintiff for its services. (Dkt. 1-1.) Defendant counterclaimed for breach of contract, negligence and unjust enrichment based on Plaintiff's

---

[4] Plaintiff argues Defendant hired a new subcontractor because they were rushing the installation. Defendant contends it hired a new subcontractor due to Plaintiff's faulty work. A jury can decide.

allegedly faulty installation and the resulting damage.  (Dkt. 5.)  Plaintiff moves for summary judgment on the counterclaims.  (Dkt. 30.)

## II.    Standard of Review[5]

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.'"  *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186–87 (11th Cir. 2011) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial responsibility of asserting the basis for his or her motion.  *See Celotex Corp.*, 477 U.S. at 323.  The movant is not, however, required to negate the non-movant's claim.  Instead, the moving party may meet his burden by "'showing'—that is,

---

[5] Defendant wrongly cites the Georgia standard for summary judgment.  But in federal court—where this case is because of *Defendant's* removal—the federal standards for summary judgment apply.

pointing to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has carried its burden, the non-moving party must present competent evidence that there is a genuine issue for trial. *Id.* at 322.

The Court views all evidence and factual inferences in a light most favorable to the non-moving party. *See Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). But mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 248. "The requirement is that there be no genuine issue of material fact." *Id.* The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III. Discussion

### A.    Breach of Contract

Plaintiff argues it is entitled to summary judgment on Defendant's breach of contract counterclaim because (a) Defendant has not provided expert evidence establishing the applicable standard of care, and (b) its claims sounds in tort rather than contract.

## 1.     Applicability of Contract Law

There is a duty "implied in every contract for work or services" to perform skillfully and "in a workmanlike manner," including in construction contracts. *Schofield Interior Contractors, Inc. v. Standard Bldg. Co., Inc.*, 293 Ga. App. 812, 814; *Hall v. Harris*, 239 Ga. App. 812, 817 (1999) ("[I]mplied in every contract by a builder-seller is the implied duty that construction was performed in a 'fit and workmanlike' manner.")   Breach of this duty can, depending on the facts, sound in either contract or in tort.   *Fireman's Fund Ins. Co. v. Carpet Cap. Fire Prot.*, Inc., 593 F. Supp. 3d 1246, 1254 (N.D. Ga. 2022).   "Where the conduct at issue is alleged to have violated an express contractual obligation, the claim is appropriately brought as breach of contract." *Id., citing Hudgins v. Bacon*, 171 Ga. App. 856, 862 (1984) (explaining that "where the duty to build a fit and workmanlike product is the builder's express contractual obligation[,]" the claim is for breach of contract).   But where there is no express violation of the contract, the claim sounds in tort. *Id.*

Here, Defendant's breach of contract claim alleges Plaintiff failed to "fully provide the required work" and/or failed to perform the required

work "in a good and workmanlike manner."  Defendant's claim that Plaintiff did not "fully provide the required work" appears to allege an express violation of a contractual duty.  The claim Plaintiff did not perform in a "good and workmanlike" manner could be express or implied.  But we are at summary judgment, so the evidence controls, not the pleadings.

Neither party has presented evidence of contract provision defining Plaintiff's obligations on the jobsite.  In moving for summary judgment, Plaintiff notes that Defendant "fails to adequately allege a contract at all" and fails to present evidence of the terms of the alleged contract.  (Dkt. 30-1 at 9-10.)  In response, Defendant cites an affidavit from one of Plaintiff's employees saying he sent Defendant a quote for the project on January 15, 2019 and Defendant accepted that quote in May 2019.  (Dkt. 36 at 5 (citing Dkt. 30-3 at ¶¶ 1-12).)  But that quote sets forth Plaintiff's prices for labor, supplies, and equipment necessary for the installation. It also includes provisions saying "punch list" items are not a basis for withholding payment, installation is based on parameters previously given, all other contractors must be out of the workspace before Plaintiff starts, and deviations from the parameters can result in additional costs.

11

Defendant does not identify which of these terms it claims Plaintiff violated; it merely says there "may be a factual dispute" related to the contract terms.  (Dkt. 36 at 5.)  But, at summary judgment, Defendant bears the burden of presenting evidence (even disputed evidence) as to the contractual provision it claims Plaintiff violated.  *See Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 161 (2008) ("[Non-movant] offers no evidence of the terms of a contract under which [Movant] performed work at her house. When [Movant] pointed to the lack of evidence concerning the contract terms, [Non-movant] had the burden of coming forward with evidence to demonstrate those terms.")  It fails to do that.  Indeed, Defendant avers a contract that includes terms without ever saying Plaintiff violated those provisions.  And absent evidence of the express contractual terms Plaintiff allegedly breached; Defendant could not prevail on its breach of contract claim.  So, to the extent Defendant is alleging breach of a specific contract term, Plaintiff is entitled to summary judgment.[6]  *See Black Box Royalties, Inc. v. Universal Music*

---

[6] If Defendant had provided evidence of an express duty to perform in a workmanlike manner, it would still need to present evidence of the applicable standard if care or, in the alternative, that Plaintiff's breach was "clear and palpable."  *NMK Holding Corp. v. Choice Facility Servs. Constr., Inc.*, 2019 WL 13215279, at *2 (N.D. Ga. Mar. 25, 2019) ("A

*Publ'g, Inc.*, 839 F. App'x 346, 349 (11th Cir. 2020) ("Without evidence of the terms of the [contract], a reasonable jury could not find that [Movant] breached those contracts.")  To the extent Defendant is alleging a breach of the implied duty to perform in a workmanlike manner, that claim is one for tort.   The Court considers Defendant's negligence claim below.

### B.   Negligence

Plaintiff argues it is entitled to summary judgment on Defendant's negligence claim because Defendant has not provided expert evidence establishing the applicable standard of care.  (Dkt. 30-1 at 4.)  "Generally plaintiffs in a negligent construction case must establish the standard of care applicable to the defendant by the introduction of expert testimony." *Bilt Rite of Augusta, Inc. v. Gardner*, 221 Ga. App. 817, 817 (1996).  "A standard of care must be proved by an expert in professional negligence cases because a jury cannot rationally apply negligence principles to professional conduct without evidence of what the competent professional would have done under similar circumstances; as the jury may not be

---

breach of the express duty to build the house in a fit and workmanlike manner claim requires the establishment of a duty and the standard of care for a builder to build in a fit and workmanlike manner, much like a negligence claim.")

permitted to speculate about what the professional custom may be, there must be expert evidence as to the professional custom required in such cases." *Id.* Failure to present expert evidence on the applicable standard of care normally results in dismissal at the summary judgment stage. *See NMK Holding Corp. v. Choice Facility Servs. Constr., Inc.,* 2019 WL 13215279, at *4 (N.D. Ga. Mar. 25, 2019) ("Absent an expert witness Plaintiff's negligent construction claim fails as a matter of law and is therefore dismissed [on summary judgment].")  Defendant has failed to provide expert testimony.

But evidence of negligence in some cases (even professional negligence cases) may be so "clear and palpable" as to be understood by a jury without expert evidence as to a professional standard of care. *Bilt Rite of Augusta, Inc.,* 221 Ga. App. at 817.  Many cases dealing with the "clear and palpable evidence" exception involve instances in which a builder admits performing below the applicable standard of care. *See e.g., Dave Lucas Co. v. Lewis,* 293 Ga. App. 288, 291 (2008) ("[I]f the defendant himself testifies that he should have performed and did perform an act which the evidence shows he did not perform, and if causation is shown, the case may become a clear and palpable case of negligence and proof of

a professional standard is not required."); *Hudgins v. Bacon*, 171 Ga. App. 856, 859-60 (1984). Plaintiff admits no such thing. But Defendant points to evidence Plaintiff failed to secure glass (such that it fell and shattered); that Plaintiff tore the base off the wall, crushed lighting fixtures, and damaged flooring; and that Plaintiff broke some of the glass it was supposed to install and had other significant problems installing the glass. (Dkts. 36 at 4; 40-1 ¶¶ 6-8.) This, Defendant argues, is proof of "clear and palpable negligence" such that no expert testimony is required. (Dkt. 36 at 4.)

Defendant cites *Khoury Const. Co. v. Earhart*, 191 Ga. App. 562 (1989) to support its argument. There, the Court found

> It does not appear that expert opinion testimony was essential to prove the appellees' claim that the appellant had not built the house in a fit and workmanlike manner. The problem with the golf cart garage door was its placement so that with cars parked in the garage one could not drive the golf cart in or out of the garage. Thus, for all practical purposes, the golf cart door was patently useless and it did not take an expert to reach that diagnosis. The hardwood floor creaked loudly, moved up and down, and had numerous wide spaces between the boards; likewise, the jury did not need an expert to tell it that the floor was defective. "[I]t is possible for evidence to establish a known or knowable defect without proof of a professional standard, if the proof is clear and palpable to the jury.

*Id.* at 563.  The evidence Defendant presents shows damages comparable, if not worse, than the problems in *Khoury*.  (Dkt. 40-1 ¶¶ 7-8.)  But Defendant still has a problem: to show these damages Defendant cites an affidavit from Chip Rayfield, Defendant's Director of Architectural Products.  (Dkt. 37-1.)  Rayfield outlines the Change Order Defendant received from the general contractor claiming Plaintiff's employees caused significant damage to other parts of the worksite.  (Dkt. 37-1 ¶¶ 26-27.)  What the general contractor allegedly said, however, is inadmissible hearsay.  And the Court may only consider hearsay evidence on summary judgment "if the statement could be reduced to admissible evidence at trial or reduced to admissible form."  *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012).

One option would be to admit the Change Order under the business records exception.  *See* Fed. R. Evid. 803(6).  But Defendant has not filed that document with the Court or produced it to Plaintiff during discovery.  (Dkt. 40-1 ¶ 6.)  So, the Court cannot assess whether the document would be admissible as a business record, and evidence not produced during discovery is generally not admissible at trial anyway.  Another option would be to put the hearsay declarant (the general contractor) on the

stand.  But Defendant does not disclose that person by name or say anything about his or her availability.  So the Court cannot assess this option.  *Id.*  ("The possibility that unknown witnesses will emerge to provide testimony on this point is insufficient to establish that the hearsay statement could be reduced to admissible evidence at trial."); *Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996) ("There is nothing to indicate that [Plaintiff's] statements (which were based on the statements of unknown co-workers) will lead to admissible evidence.").

Luckily for Defendant, the record contains other evidence of Plaintiff's alleged negligence.  Rayfield says he personally saw Plaintiff break three panels of glass.[7]  (Dkt. 37-1 ¶ 30.)  Defendant hired a second contractor to "finish" Plaintiff's work, allegedly because of the damage Plaintiff caused.  (Dkt. 37-1 ¶¶ 33-35.)  Defendant also attaches over fifty pages of photos showing Plaintiff's allegedly botched installation job.

---

[7] Mr. Rayfield's affidavit both claims that Plaintiff substantially completed its work in February 2020 and that he saw Plaintiff destroy glass onsite in March 2020.  (Dkt. 37 ¶¶ 29, 30.)  The Court is unsure whether this is contradictory evidence or whether it is reconcilable. Either way, that is not an issue for the Court to decide.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 (11th Cir. 2003) ("Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment.")

While the photos do not show fallen doors and broken glass, some of the photos display installation defects comparable to those in *Khoury*, including glass that was not properly attached to the floor or adjacent walls. (Dkt. 37-3 at 44, 46, 47, 51.) Viewed in the light most favorable to Defendant, there is evidence of defects so "clear and palpable" that no expert testimony is required.  So, Defendant's negligence claim may proceed.

### C.    Unjust Enrichment

Plaintiffs move for summary judgment on Defendant's unjust enrichment counterclaim because (a) it is not pleaded in the alternative, (b) it is precluded by express contract, and (c) it is based on the same allegations as the negligence claim, so Defendant needed expert evidence to establish the applicable standard of care.  Plaintiff is correct that a plaintiff must plead unjust enrichment in the alternative, but this is a pleading deficiency properly raised in a motion to dismiss under 12(b)(6), not in a motion for summary judgment.  And the Court has established that the evidence, viewed in the light most favorable to Defendant, alleviates the need for expert testimony to establish the standard of care.

But because Defendant's negligence claim may proceed to trial, the Court must dismiss the unjust enrichment claim. "Equity will grant relief only where there is no available adequate and complete remedy at law." *McGlashan v. Snowden*, 738 S.E.2d 619, 620 (Ga. 2013). "Unjust enrichment is an equitable concept," and "the availability of money damages affords an adequate and complete remedy." *Id.*; *Morrell v. Wellstar Health Sys., Inc.*, 633 S.E.2d 68, 73 (Ga. Ct. App. 2006). Thus, "the availability of any claim for money damages excludes a claim for unjust enrichment." Ga. Contracts Law and Litigation § 12:8 n.3 (2d ed.); *See also Mungai v. Chase Bank USA, N.A.*, 2020 WL 10225827, at *4 (N.D. Ga. Aug. 4, 2020) ("Unjust enrichment is an equitable principle that applies only when there is no adequate remedy at law.").

*McGlashan* illustrates this principle well. There, a landowner hired builders to construct a house on his lot. The builders mistakenly constructed the house on his neighbor's lot instead. The landowner moved in anyway. The neighbor filed an ejectment action, seeking title to the house. The landowner countersued for unjust enrichment. The landowner also filed a third-party complaint against the builders, "seeking to recover from them the full value of [his] loss should he lose

the ejectment action." 738 S.E.2d at 620. The trial court granted summary judgment to the neighbor on the landowner's unjust enrichment claim. The Georgia Supreme Court affirmed because the landowner had a potential remedy at law: damages from the builders.

> [The landowner's] third-party complaint against the allegedly-negligent builders of the home seeks monetary damages for [his] loss of the home should he lose the ejectment action filed by [the neighbor]. Since [the landowner] could recover money damages from the builders in this action, it would be inappropriate for the trial court to grant him equitable relief [under the doctrine of unjust enrichment].

Id. at 620–21. This case is similar. Defendant asserts its negligence claim for the same damages—based on the same alleged negligent installation—as its unjust enrichment claim. As in *McGlashan*, it is not yet clear whether that claim will succeed. But since it "could," and since Defendant would "recover money damages" if it did, "it would be inappropriate" to let the unjust enrichment claim proceed. *Id.*

To be clear, unjust enrichment may be asserted as an alternative remedy, including at the trial stage. *See, e.g., Bedsole v. Action Outdoor Advert. JV, LLC*, 325 Ga. App. 194 (2013). But here, Defendant could not prevail on its unjust enrichment claim at trial because the underlying facts are identical to those supporting its negligent construction claim.

This leaves two options at trial: Defendant proves the facts underlying both claims but recovers only for negligence as an "adequate and complete remedy at law." Or Defendant does not prove the facts underlying both claims, in which case it recovers nothing. Either way, Defendant cannot recover under an unjust enrichment theory.

**D.    Arguments Common to All Claims**

Plaintiff argues it is entitled to summary judgment on all counterclaims because Defendant materially breached the contract first by (a) not providing clean and dust-free site conditions to Plaintiff; (b) shortening Plaintiff's agreed time of performance; and (c) failing to provide adequate training before work as agreed. (Dkt. 30-1 at 12.) Plaintiff also argues Defendant gave express instructions or permission for all of Plaintiff's actions at issue. (Dkt. 30-1 at 13.) But despite Plaintiff's claim to the contrary, there is genuine factual dispute as to all those issues. Defendant contends it informed Plaintiff of and compensated it for the changed working conditions before Plaintiff started its work. (Dkt. 37 ¶ 12.) The parties disagree as to the amount of time Plaintiff had to complete the project and as to whether Plaintiff accepted compensation in return for any changes in timeline. (Dkt. 37

¶¶ 16, 76.)[8]  Defendant also asserts training was not a material term of the contract and attaches evidence that Plaintiff knew how to install the Maars glass without instruction.  (Dkts. 37 ¶ 17; 37-2 at 1.)  Finally, though Defendant concedes it directed Plaintiff to perform certain tasks, it argues it never implied that Plaintiff may or should sacrifice quality of work.  (Dkt. 37 ¶ 46.)  Given these factual disputes, Plaintiff is not entitled to summary judgment on all counts.

## IV.   Conclusion

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Partial Summary Judgment (Dkt. 30).  Specifically, the Court dismisses Count I (breach of contract) and Count III (unjust enrichment).  The Court allows Count II (negligence) to proceed.

**SO ORDERED** this 8th day of March, 2023.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[8] Defendant's evidence on this matter is inconsistent.  Mr. Rayfield's affidavit both claims that Plaintiff had approximately three weeks per floor and that Plaintiff accepted compensation for an accelerated timeline.  (Dkt. 37 ¶¶ 16, 76.)  But again, that is an issue of weight and credibility of the evidence.  *McCormick,* 333 F.3d at 1240.